UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SHANNON L. BENTLEY,               )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     CIVIL NO.  1:17cv230
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social Security,  )
                                  )
          Defendant.              )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Supplemental
Security Income (SSI) as provided for in the Social Security Act.  Section 205(g) of the Act
provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the
transcript of the record including the evidence upon which the findings and decision complained
of are based.  The court shall have the power to enter, upon the pleadings and transcript of the
record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with
or without remanding the case for a rehearing."  It also provides, "[t]he findings of the
[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42
U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to last for a continuous period of no less than 12 months. . . ."
42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant has not engaged in substantial gainful activity since March 21, 2014, the application date (20 CFR 416.971 *et seq*.).

2.   The claimant has the following severe impairments: degenerative disc disease, cervical and lumbar; lumbar/thoracic radiculopathy; cervical and lumbar spondylosis; moderate carpal tunnel syndrome on the left; bilateral knee osteoarthritis with tears of the anterior cruciate ligaments (ACL) and medial meniscus; depression/anxiety; morbid obesity; and asthma (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 416.967(a) except: She can sit for 6 hours total in an 8-hour workday. She needs to alternate to standing for 5 minutes after every 30 minutes of sitting. She can stand for 2 hours total in an 8-hour workday. She needs to alternate to sitting for 5 minutes after every 30 minutes of walking. She uses a cane in the non-dominant hand for ambulation. She can push and pull as much as she can lift and carry. She can frequently reach overhead on the right and left. She can frequently handle on the left. She can frequently finger on the left. She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can have frequent exposure to unprotected heights and moving mechanical parts, and frequent exposure to dust, odors, fumes, and pulmonary irritants. She can have frequent exposure to extreme cold, frequent exposure to extreme heat, and frequent exposure to slick or slippery surfaces. She is limited to the performance of simple, routine tasks. She is limited to simple, work-related decisions. She can have frequent exposure to coworkers and the public. Time off task can be accommodated by normal breaks.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on September 23, 1969 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since March 21, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 23- 48).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff  filed her opening brief on September 27 2017.  On December 5, 2017, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on December 20, 2017.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

On March 21, 2014, Plaintiff filed a Title XVI application for Supplemental Security Income, alleging disability beginning February 7, 2013 due to degenerative disc, chronic pain in back, slipped disc, pinched nerves in back, arthritis in knees, back, and neck, torn ACL and meniscus, neuropathy, and multiple sclerosis ("MS"). Tr. at 249, 274. Plaintiff later amended her alleged onset date to March 21, 2014. Tr. 269. The claim was denied on June 19, 2014, and upon reconsideration on September 23, 2014. Tr. 159-62, 166-68. A hearing was held, after which ALJ Daniel Balutis issued an unfavorable decision. Tr. 48.

On March 28, 2017, the Appeals Council denied review, making the ALJ's decision the final Agency decision. Tr. 1-4. This action followed. This court has jurisdiction. 42 U.S.C. §§ 405(g), 1383 (c)(3).

Plaintiff was 44 years old on the application date and subsequently changed age category to a younger individual age 45-49. Tr. 47. She completed the 12th grade. Tr. 275. She has past work as a department store manager and a cashier. Tr. 275.

Plaintiff has diagnoses of multiple sclerosis ("MS"), lower back pain and leg weakness on standing, hypertension, chronic pain, morbid obesity, torn meniscus, asthma, protein S deficiency, depression, and hypersomnia with sleep apnea. Tr. 357, 359, 362, 363, 366, 372, 402, 409. Associated symptoms of MS include fatigue, heat intolerance, tremors, memory problems, bladder incontinence, and receptive aphasia. Tr. 362, 366, 372. Examination showed she had decreased sensation in the bilateral lower extremities, patchy decreased cold on the left

hemothorax, decreased vibration on the right hemothorax, and slow lumbering gait. Tr. 362, 366, 372.

Between July 25, 2013 and August 22, 2014, Plaintiff was treated at Indiana Pain Centers for neck, low back, and knee pain. Tr. 440-518, 613-42. Examination showed there was tenderness to the thoracic, cervical, and lumbar spine. Tr. 440-518, 613-42. She was diagnosed with chronic pain and prescribed Oxycontin, Percocet and Voltaren Gel; muscle spasms and prescribed Baclofen, Flexeril, Tizanidine, and Buspirone; anxiety/depression and prescribed Buspirone; neuropathy and prescribed Neurontin; vitamin deficiency; and knee pain and lumbar pain, for which steroid injections were recommended. Tr. 440-518, 613-42.

On February 7, 2014, an MRI of the lumbar spine revealed degenerative changes and facet arthropathy from L2/3 to L5/S1. T 523. At L3/4, L4/5 there was disc desiccation, broad-based disc bulge, moderate thickening of the ligamentum flavum, and mild narrowing of the central canal. Tr. 523. An MRI of the thoracic spine revealed degenerative changes with disc bulge from C/5 to C6/7, abutting the cord. Tr. 524. An MRI of the cervical spine showed disc bulge abutting the cord at C4/5, C5/6, and C6/7 with mild narrowing of the central canal. Tr. 525.

On February 21, 2014, an MRI of the left knee revealed a complex tear of the body and anterior segment of the medial meniscus, near completely tear of the ACL, tendinopathy, and osteoarthrosis of the left knee. Tr. 521. An MRI of the right knee revealed a complex tear of the body and anterior segment of the medial meniscus, partial tear of the ACL, and osteoarthrosis of the right knee. Tr 522.

On March 14, 2014, Plaintiff was seen by Dr. Lisa M. Holtsclaw, D.O. at Parkview for a check on Fetzima. Tr. 428. Plaintiff reported that it works great for three hours then tapers off and

worsens. Tr. 428. She was not sleeping well and denied suicidal thoughts, but wanted to cry a lot. Tr. 428. She has been using her inhaler more often and gets periods of harsh coughing fits with chest tightness and wheezing. Tr. 428. She was in the emergency department twice recently for asthma and chest pain. Tr. 428. She was diagnosed with major depression and hypertension. Tr. 428.

On March 21, 2014, Plaintiff saw Dr. Holtsclaw for hypertension and abdominal pain. Tr. 430. Plaintiff reported the abdominal pain has been waxing and waning for the past year and was located in the right upper quadrant. Tr. 430. The pain was a severity 7/10 and moderate, radiated to the back and pelvis, and aggravated by movement. Tr. 430. She was seen by Dr. Thomas for chronic pain, who prescribed oxycodone, gabapentin, and buspirone. Tr. 430. Plaintiff stated that her anxiety and depression medications were no longer working and the Advair made her breathing worse so she is on Combivent. Tr. 430. She has tried Zoloft, Wellbutrin, and Celexa for depressive symptoms and has been treated for depression since 2004. Tr. 430. Plaintiff was diagnosed with hypertension, abdominal pain, asthma, Protein S deficiency, stable MS, depression, and chronic pain syndrome. Tr. 430-31. She was prescribed Lisinopril and dicyclomine. Tr. 430.

On April 11, 2014, Plaintiff was seen by Dr. David Paul J. Almdale, M.D. at Fort Wayne Orthopedics. Tr. 434. She had been seen in 2003 for her left knee and had a long course of knee complaints and degenerative arthritis. Tr. 434. Plaintiff stated her pain was mostly anterior but also medial. Tr. 434. She had an injection years ago which gave her some benefit. Tr. 434. She is currently taking Percocet and Mobic and believes she has fluid in her thighs. Tr. 434. MRIs from February 21, 2014 show degenerative arthritis medial side, medial meniscal involvement, and

ACL partial tears. Tr. 436. X-rays showed rather significant medial compartment arthritis with near bone-to-bone contact and some degeneration of the patellofemoral joint space. Tr. 436. Dr. Almdale diagnosed osteoarthritis and noted that at her height and weight, surgery should be put off and he recommended non-operative methods, including observation, foot supplements, and anti-inflammatory medications. Tr. 436.

On May 23, 2014, Plaintiff underwent a psychological consultative examination with Alan Stage, Ph.D. Tr. 596-99. Plaintiff reported that her vision is compromised due to MS and has had frequent prescription changes. Tr. 596. She has been diagnosed with DDD, neuropathy, arthritis of the knees, a torn ACL, asthma, and MS. Tr. 596. She is currently taking Cymbalta, Buspar, Percocet, Oxycontin, Symbicort, Baclofen, Comjbivent, Lisinopril, Mirilax, Prilosec, Neurontin, Bentyl, and vitamin D. Tr. 596. Plaintiff reported significant feelings of depression and anxiety, which she attributed to chronic pain and health problems. Tr. 596. Her emotional distress is accompanied by racing thoughts, frequent worrying, free-floating anxiety, and tangential thinking. Tr. 596. Plaintiff is able to complete self-care tasks but indicated they tend to be difficult due to chronic pain and she requires assistance with most daily living tasks. Tr. 597. Plaintiff's affect appeared flat and her presentation suggested feelings of depression and anxiety. Tr. 597. Plaintiff was able to recall all four objects immediately, but only two of four objects after a five minute delay. Tr. 597.

Dr. Stage noted that Plaintiff's recent memory, working memory, and serial abilities were low average. Tr. 599. Her arithmetic skills were average to low average. Tr. 599. He noted that Plaintiff appeared to be experiencing longstanding feelings of anxiety and depression associated with chronic pain and health problems. Tr. 599. Dr. Stage diagnosed Plaintiff with anxiety

disorder and mood disorder and assigned her a Global Assessment Functioning score of 55. Tr. 599.

On May 30, 2014, State agency psychological consultant Amy S. Johnson, Ph.D. opined that Plaintiff has mild limitations in activities of daily living and concentration, persistence, or pace. Tr. 137. Dr. Kenneth Neville, Ph.D.'s September 2014 findings reflect those of Dr. Johnson's. Tr. 151.

On June 18, 2014, Plaintiff underwent a physical consultative examination with H.M. Bacchus, Jr., M.D. Tr. 609-12. Plaintiff reported DDD with aching, shooting pain in her neck and lower back, worse with bending, twisting, turning, lifting, pushing, pulling, and overhead reaching. Tr. 609. She was diagnosed with MS 4-5 years ago and treatment has included Solu Medro infusions and Copaxone. Tr. 609. She noticed weakness and heaviness in her legs, vision changes, cognitive issues with difficulty retaining information, and tingling in her legs, feet, and arms. Tr. 609. She is on Neurontin. Tr. 609. Plaintiff has arthritis affecting the bilateral knees and was told she will need knee replacements. Tr. 609. Plaintiff has popping, pain, and weakness in her knees worsened with prolonged standing and walking, squatting, and climbing. Tr. 609. She is unable to kneel or crawl. Tr. 609. Weather changes affect her arthralgias. Tr. 609. She claims she can sit 10 minutes, stand 2 minutes, walk 1 minute, and lift no weight. Tr. 609. She uses a cane for walking and an electric cart in the store. Tr. 609.

On exam, Plaintiff had antalgic gait, station erect and was using a left-sided cane. Tr. 610. Plaintiff was unable to perform heel, toe, or tandem walk, or hop. Tr. 610. She squats 1/3 the way down with support and is slow to rise. Tr. 610. Range of motion reveals deficits in the neck, lower back, shoulders, knees, hips, and left ankle. Tr. 610. She had bilateral knee tenderness. Tr.

610. Her gait was slow and sustainability appeared poor with her assistive device. Tr. 610. Fine finger manipulabilities were slower. Tr. 610. She had sensory dullness in the bilateral feet and her Romberg was mildly unsteady. Tr. 610. She has a flat affect and her mood appears depressed. Tr. 610. Dr. Bacchus opined that Plaintiff was unable to safely ambulate without the cane secondary to leg and bilateral knee pain and weakness. Tr. 610. Dr. Bacchus diagnosed history of relapsing-remitting MS, DDD and DJD of the cervical spine and lumbosacral spine, DJD and osteoarthritis of the bilateral knees, neuropathy, depression/anxiety, hypertension, and asthma. Tr. 611. He noted that Plaintiff has arthralgias with limitations in regards to general mobility, range of motion, and stamina. Tr 611.

On June 19, 2014, State agency medical consultant J. Sands, M.D. opined that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently. Tr. 139. She can stand/walk 2 hours and sit 6 hours. Tr. 139-40. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. Tr. 140. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. 141. Dr. M. Brill, M.D.'s September 2014 findings reflect those of Dr. Sands's. Tr. 153-54.

On August 7, 2014, Plaintiff reported diminished cognitive functioning, right eye vision flashes, and numbness in the right face and extremities. Tr. 650. She was diagnosed with MS, chronic pain, and cognitive impairment. Tr. 650. On August 15, 2014, an MRI of the brain revealed multiple white matter hyperintensities consistent with Plaintiff's history of MS. Tr. 652.

On September 18, 2014, Plaintiff reported occasional tremors, decrease in short term memory, occasional vision symptoms, and urinary frequency and incontinence. Tr. 669. Between February 25 and February 10, 2016, Plaintiff reported back and knee pain and

on exam there was tenderness. Tr. 733-68, 835-85. Plaintiff had left foot numbness, difficulty sleeping, and unstable knees. Tr. 835-85. She was assessed with cervical radiculopathy, lumbar facet arthropathy, lumbar radiculopathy, sacriliitis, gluteus maximus tendonopathy, bulging discs, DDD, myofascial syndrome, knee osteoarthritis, chronic pain syndrome, muscle pain, and MS. Tr. 733-68, 835-85.

On March 23, 2015, a lumbar MRI revealed multilevel degenerative changes mostly L3 through L5. Tr. 773. There was transitional anatomy with a rudimentary L5-S1 disc. Tr. 773. At L3-L4 there was disc protrusion asymmetric to the right touching without flattening the right L4 nerve root. Tr. 733. At L4-L5 broad disc protrusion and facet arthropathy and mild excess epidural slightly flattening both descending L5 nerve roots and there was mild foraminal and central narrowing. Tr. 733. A cervical spine MRI revealed multilevel degenerative changes mostly C4 through C7. There was central narrowing C4 through C7 most prominently behind C5-C6 and C6-C7 where there was at least moderate narrowing, flattening the cord with abnormal cord signal. Tr. 775. There was disc extrusion at C6-C7 extending above and below the disc level indenting the central canal. Tr. 775. Foraminal narrowing at C4-C5 and C5-C6 could be affecting the C5 and C6 nerve roots and slightly at the left C3-C4 level could be affecting the left C4 nerve root. Tr. 775. An MRI of the bilateral knee revealed mild to moderate degenerative change in both medial compartments with mild genu varus angulation bilaterally. Tr. 776.

On June 4, 2015, Plaintiff reported feeling achy after her injections. Tr. 659. She still felt week on the left side and had intermittent blurred vision and tinnitus. Tr. 659. She was diagnosed with MS and ordered to take Avonex weekly. Tr. 659.

On July 8, 2015, an EMG of the right lower extremity revealed chronic denervating L5,

S1 region radiculopathy. Tr. 725.

On December 8, 2015, Plaintiff was seen by Dr. Walter P. Jacobsen, D.O. for neck pain, left upper extremity, pain, and pain shooting down the left arm into the fingers. Tr. 832. On exam, she has 2/4 reflexes in the right upper extremity and ¼ left upper extremity. Tr. 833. She has 2/4 bilateral lower extremities in the patellar and Achilles. Tr. 833. Plaintiff had decreased pinprick and two-point discrimination in the left upper extremity in the C6-C7 dermatome. Tr. 833. MRIs revealed severe degeneration at C5-6 and C5-7 with disc osteophyte complexes causing severe foraminal stenosis on the left greater than the right and an acute-appearing disc bulge at C6-7. Tr. 833. Dr. Jacobsen recommended injections or anterior cervical discectomy and fusion. Tr. 833.

A hearing was held on April 18, 2016. Tr. 58-111. Plaintiff testified to the following: She has been using a cane for six years. Tr. 61. She has weakness in her right knee and it tries to buckle so she uses the cane to take some weight off that knee. Tr. 62. Although the cane was not prescribed, she was prescribed a walker. Tr. 92. However, the walker causes her back to hurt more, so she uses the cane. Tr. 92. In the 25 minute drive to the hearing, Plaintiff had pain in her low and mid back and knees. Tr. 63. Plaintiff has problems with basic addition and subtraction due to her MS, which affects her thinking. Tr. 64. Plaintiff has osteoarthritis in her knees that she rates a 6/10 on the pain scale with medication and it occurs every day. Tr. 69-70. She rates her back pain as 7/10 that occurs all day, every day. Tr. 70-71. Plaintiff has an inhaler and nebulizer for her asthma. Tr. 71-72. She has gone to the hospital for her asthma since 2014. Tr. 72. Plaintiff has pain in her left hand rated as a 4/10 due to carpal tunnel. Tr. 72. Plaintiff is taking medication for her depression as well. Tr. 73. Side effects from her medication include drowsiness and loss

of sensation in her hands. Tr. 73-74.

Plaintiff can walk a block or 10 minutes, after which she develops pain in her legs, knees, and lower back, requiring her to sit down. Tr. 74-75. She has to sit down for 10-15 minutes before she is able to get back up again and walk that same distance. Tr. 75. Plaintiff can stand 10 minutes, after which she develops pain in her knees, lower back, and legs, requiring her to sit for 15-20 minutes. Tr. 75-76. She can sit 25 minutes, after which she gets pain in her legs, lower back, and neck, requiring her to stand 10-15 minutes. Tr. 76. She has pain in her mid-back, neck, and shoulders when lifting a gallon of milk. Tr. 77-78. She can comfortably lift 1 pound and tries not to lift things that are heavier. Tr. 78. Plaintiff has difficulty grasping things with her hands and drops things 10-15 times over the course of a week. Tr. 78. She can bend, but not stoop or squat. Tr. 79. When she bends, she has difficulty getting back up. Tr. 80. She can walk up 2-3 steps, but not an entire staircase because her knees give out and she has pain in her knees and back. Tr. 80.

Plaintiff enjoys reading, but has difficulties concentrating and has to re-read a sentence or paragraph a few times to understand it. Tr. 81-83. Plaintiff is able to cook microwave meals. Tr. 84. She goes grocery shopping once a week, but needs to ride a scooter. Tr. 85. She has difficulty reaching due to her medical conditions. Tr. 85-86. She does laundry, but has difficulty carrying it. Tr. 86. Her daughter sweeps and vacuums, but Plaintiff dusts about once a month. Tr. 86-87. Plaintiff's asthma flares up when she dusts. Tr. 87. Plaintiff can use a dishwasher, but has pain in her back, legs, and mid back after a few minutes. Tr. 88. Plaintiff's son does yardwork. Tr. 88. Plaintiff has pain in her lower back and knees when she makes her bed. Tr. 88. She goes to church twice a month, but has to get up and move around during the service due to back pain. Tr.

89. Plaintiff sleeps 6-7 hours per night and wakes up 3-4 times due to back and hip pain. Tr. 90. She takes two naps every other day that last 20 minutes. Tr. 90. She has to sit down and take breaks when she showers. Tr. 91.

Plaintiff has hip problems and when she stands or sits, her hip gets stiff and starts hurting. Tr. 92-93. When her MS flares up, she has incontinence and has to wear protective garments. Tr. 93. Other than pain, Plaintiff's biggest problem is fatigue. Tr. 93. She has taken medication for MS, including Copaxone and Avelox. Tr. 93. She stopped taking the medications because of the side effects, including itching, burning, and swelling. Tr. 95. She has fallen several times because of loss of balance. Tr. 96. Pain medications include Oxycontin, Percocet, Neurontin, and Dicyclomine. Tr. 96. She also takes Flexeril. Tr. 96. Her mental health medications include Effexor, Buspar, and Lorazepam. Tr. 97. Plaintiff has problems with her shoulder a few times a month due to bursitis that causes her shoulder to get sore and stiff. Tr. 97. Plaintiff has difficulty being around a group of people and it causes her anxiety to worsen. Tr. 100.

The vocational expert testified to the following: A person with Plaintiff's age, education, work experience, and the ALJ's determined RFC would be able to perform the jobs of lens inserter, addresser, and order clerk. Tr. 102-04. If that person were off task more than 10%, it would preclude work. Tr. 106. If that person had occasional use of their left hand and frequent use of their right, it would preclude the jobs mentioned. Tr. 107.

In support of remand, Plaintiff first argues that the ALJ erred in failing, in Step 2, to classify Plaintiff's MS as a severe impairment. The Step 2 determination is a "de minimis screening for groundless claims." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting Thomas v. Colvin, 826 F.3d 953, 960 (7th Cir. 2016)). "An impairment is not severe

only if it is a slight abnormality that has no more than a minimal effect on the ability to do basic work activities, such as understanding, carrying out, and remembering simple instructions, responding appropriately to supervisors and co-workers, and dealing with changes in a routine work setting." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) (citing SSR 96-3p and 20 C.F.R. § 404.1521) (internal quotations omitted).

Plaintiff argues that, in this case, The ALJ's analysis at Step 2 is wrought with picking and choosing evidence to find Plaintiff's MS not severe. An ALJ must consider all medical evidence and cannot pick and choose only those facts that support non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ determined that Plaintiff's MS is not severe because "[a]ll of the documents say that her multiple sclerosis is either in remission or in the past" and the diagnosis is based on her self-report. Tr. 24. The ALJ also reasoned that all of the studies fail to reveal evidence of MS. Tr. 24. Plaintiff contends that the ALJ's reasoning is erroneous.

First, the record reveals that Plaintiff has a current diagnosis of MS that is not based on self-report and is diagnosed by various treating sources, including Dr. William Hedrick, M.D. and Dr. Thomas M. Banas, M.D. Tr. 430-31, 463, 553, 650, 659, 733-68, 835-85, 891. Additionally, an MRI of the brain from August 2014 revealed white matter hyperintensities consistent with MS. Tr. 652.

Second, Plaintiff reports symptoms consistent with MS to her physicians throughout the record. Common symptoms of MS include fatigue, numbness or tingling, walking difficulties, weakness, vision problems, bladder problems, bowel problems, pain, cognitive changes, and depression. As the record shows, Plaintiff reported fatigue; diminished cognitive functioning; right eye vision flashes and intermittent blurred vision; numbness in her face, left foot, and

extremities; left sided weakness; tingling in her legs, feet, and arms; and depression. Tr. 519, 596, 613-41, 650, 659, 733-68, 819, 835-85. On exam, Plaintiff appeared depressed; had a slow, antalgic gait; was unable to perform heel, toe, or tandem walk and hop; and had limited range of motion. Tr. 597, 610, 611.

Plaintiff also testified that she has symptoms of MS, including weakness in her right knee, problems with basic addition and subtraction due to her MS, difficulty concentrating, fatigue, and incontinence which requires her to wear protective garments. Tr. 62, 64, 81-83, 93. After the application date, Plaintiff was taking Copaxone and Avonex for her MS, but had to stop due to side effects of itching, burning, and swelling. Tr. 93, 95.

Plaintiff claims that the ALJ's reasons for not finding her MS severe are completely contradicted by the record. Plaintiff's also claims that her MS and associated symptoms would have more than a minimal effect on her ability to do basic work activities and thus should have been found severe.

Further, argues Plaintiff, in improperly dismissing Plaintiff's MS, the ALJ subsequently failed to consider it in his RFC determination. The SSA guidelines for assessing a claimant's residual functional capacity require analysis of both severe and non-severe impairments, "[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Regardless whether these impairments are severe or non-severe, the ALJ must take into consideration limitations from these impairments, as they were clearly "medically determinable impairments" diagnosed by acceptable medical sources. 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2). Failure to consider the "entire constellation of ailments– including those impairments that in isolation are not severe" constitutes reversible error. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). *See also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Even if the ALJ found Plaintiff's MS non-severe, it should have been accounted for in the RFC determination. Plaintiff's treating physician Dr. Banas diagnosed her with MS and prescribed Avonex to treat it. Tr. 891. Further, Dr. Bacchus noted that Plaintiff has arthralgias also had trouble recalling objects after a five minute delay, and Dr. Stage opined that her recent memory, working memory, and serial abilities were low average. Tr. 597, 599. Given Plaintiff's symptoms, the objective findings, and the diagnosis of MS, Plaintiff argues that the ALJ should have accounted for the limitations in the RFC and erred in failing to do so. *Golembiewski*, 322 F.3d at 918; *Getch*, 539 F.3d at 483.

In response, the Commissioner notes that the ALJ considered Plaintiff's MS, even though the ALJ did not consider it a severe impairment. The Commissioner asserts that Plaintiff has failed to identify medical opinion evidence of any MS-related functional limitations not already considered by the ALJ. However, as Plaintiff has noted above, there is quite a bit of evidence relating to Plaintiff's MS that does not appear to be fully taken into account by the ALJ. Therefore, remand is appropriate on this issue.

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. The Seventh Circuit has warned against ALJs "playing doctor" and using their lay interpretation to interpret the raw medical data and make their own independent findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Herron v. Shalala*, 19 F.3d 329, 334 n. 10 (7th Cir.

17

1994); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). While the ALJ has the sole responsibility for determining the RFC, when he does so without the guidance of any medical opinion evidence, courts within the Seventh Circuit have remanded as unsupported by substantial evidence. *Manser v. Colvin*, No. 3:13-cv-1378-CAN, 2015 WL 2370731, at *10-11 (N.D. Ind. May 18, 2015) (remanding where the ALJ discredited all opinion evidence and failed to cite to evidence contradictory to the opinion evidence, thus failing to create a logical bridge from the evidence to his determination).

In the present case, Plaintiff points out that the ALJ gave "partial weight" to every opinion in the record, thus failing to rely on any opinion evidence in formulating the RFC. Further, the ALJ's RFC determination is extremely specific in terms of limitations. For example, the ALJ limited Plaintiff to 30 minutes of sitting, standing, and walking with 5 minute breaks; frequent handling, fingering, and reaching; and frequent exposure to hazards, dust, odors, fumes, pulmonary irritants, cold, heat, and slick or slippery surfaces. Tr. 26. However, these limitations were not opined by any medical source. In fact, the ALJ's limitation regarding hazards and dust, odors, fumes, and pulmonary irritants completely contradicts the opinion of the State agency consultants who opined that Plaintiff should avoid concentrated exposure to the aforementioned. Tr. 141, 154. This court agrees that the RFC determination is not supported by the record. *Rohan*, 98 F.3d at 830; *Herron*, 19 F.3d at 334 n. 10; *Schmidt*; 914 F.2d at 118; *Clifford*, 227 F.3d at 830; *Manser*, 2015 WL 2370731 at *10-11.

Further, in determining the RFC, the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace. The ALJ's RFC assessment and corresponding hypothetical to the vocational expert must incorporate all of Plaintiff's limitations. *Yurt v. Colvin*,

758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). "If the ALJ finds that a plaintiff has moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the [vocational expert]; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties." *Baker v. Berryhill*, No. 16-cv-1358-JPG-CJP, 2017 WL 3923339, at *4 (S.D. Ill. Sept. 7, 2017) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016)).

The ALJ found that Plaintiff has moderate difficulties maintaining concentration, persistence, or pace. Tr. 25. However, the RFC assessment did not mention a limitation in concentration, persistence or pace. Instead, the ALJ limited Plaintiff to "simple, routine tasks" and "simple, work-related decisions." Tr. 26. As the Seventh Circuit has held, a limitation to simple tasks does not account for moderate limitations in concentration, persistence, and pace. *Yurt*, 758 F.3d at 857; *Stewart*, 561 F.3d 679; *O'Connor-Spinner*; *Taylor*, 829 F.3d at 802. Further, the record supports the determination that Plaintiff has limitations in concentration, persistence, or pace. Plaintiff reported problems with focus, attention, concentration, completing tasks, following instructions, and remembering things she has read. Tr. 25, 81-83. On exam, Plaintiff was only able to recall two of four objects after a five minute delay. Tr. 597. Dr. Stage noted that her recent and working memory were low average. Tr. 599. The ALJ found, and the record supports, that Plaintiff has moderate limitations in concentration, persistence, or pace, and as such, this limitation should have been incorporated in the RFC.

Clearly, the ALJ's failure to incorporate all of Plaintiff's limitations renders the RFC

determination unsupported by substantial evidence. *See Baker*, 2017 WL 3923339, at *4;

*Stevenson v. Berryhill*, No. 16-cv-698-JPG-CJP, 2017 WL 2812975, at *5 (S.D. Ill. 2017); *Klein*

*v. Colvin*, No. 16-cv-13-JPG-CJP, 2017 WL 192753, at *5-6 (S.D. Ill. Jan. 18, 2017). Thus,

remand is appropriate on this point also.

Lastly, Plaintiff argues that the ALJ's Step 5 determination is not supported by substantial

evidence. The ALJ's RFC included the following limitations:

> She needs to alternate to standing for 5 minutes after every 30 minutes of sitting.
> She can stand for 2 hours total in an 8-hour workday. She needs to alternate to
> sitting for 5 minutes after every 30 minutes of standing. She can walk for 2 hours
> total in an 8-hour workday. She needs to alternate to sitting for 5 minutes after
> every 30 minutes walking. She uses a cane in the non-dominant hand for
> ambulation.

Tr. 26. As Plaintiff points out, this RFC determination would require Plaintiff to be a one-handed

individual for over 10% of the day. However, the jobs cited by the ALJ all require frequent use of

both hands. Tr. 105 (vocational expert testimony); DICTIONARY OF OCCUPATIONAL

TITLES (4th ed., rev. 1991) (bench assembler, 713.687-026; addresser, 209.587-010; and order

clerk, 209.567-014). As the vocational expert testified, if the hypothetical person were off task

more than 10%, it would preclude work. Tr. 106. Accordingly, since the limitations found by the

ALJ require Plaintiff to be one-handed for over 10% of the day, it would preclude the jobs cited

by the ALJ since they all require frequent bilateral handling. Thus, the Step 5 determination is not

supported by substantial evidence. Again, remand is appropriate.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: February 21, 2018.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
